NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4292
_____

EDWARD SALERNO; TERRY TRAYLOR,

Appellants

v.

JOHN S. CORZINE, N.J. Governor, in his official and individual capacity; RICHARD CODY, N.J. Former Acting Governor, in his official and individual capacities; JAMES E. MCGREEVEY, N.J. Former Governor, in his official and individual capacities; N.J. DEPARTMENT OF HUMAN SERVICES; N.J. DIVISION OF MENTAL HEALTH; MS. LORNA HINES-CUNNINGHAM, Assistant Division Director of Department of Human Services, in her official and individual capacities; MS. JOAN RICHARDSON BOWSER, Esquire, First Assistant Public Defender, in her official and individual capacities; MR. PATRICK REILLY, Deputy Public Defender, in his official and individual capacities; OFFICE OF THE PUBLIC DEFENDER, TRENTON, N.J.; N.J. DEPARTMENT OF CORRECTIONS, TRENTON, N.J.; DEVON BROWN, Department of Corrections Former Commissioner, in his official and individual capacities; JOHN MAIN, Annex, in his official and individual capacities; GRACE ROGERS, N.J. Special Treatment Unit-Annex Administrator, in her official and individual capacities; PAUL LAGANA, N.J. Special Unit-Annex, in his official and individual capacities; MERRILL MAIN, Director, N.J. Special Treatment Unit-Annex, in his official and individual capacities; MS. TINA SPAGNUOLO, Unit Director, N.J. Special Treatment Unit-Annex, in her official and individual capacities; DR. GREGORY GAMBONE, Psych., in his official and individual capacities; JENNA CACCESE, Former Program Coordinator, in her official and individual capacities; MARIELENA MOTTA, Program Coordinator, in her official and individual capacities; RUTH ROTH, Recreation Supervisor, in her official and individual capacities; LOU NORTON, Vocational Rehabilitation Counselor, in his official and individual capacities; DR. CAROL LESTER, Psych., in her official and individual capacities; DR. PHILLIP LEAVITT, Psych., in his official and individual capacities; DR. KIREEV, Psych., in her official and individual capacities; TOM CALABRESE, Psych., in his official and individual capacities; DR. EPPELLITTO, Psych., S.T.U. Kearny, N.J., in his official and individual capacities; MR. DEVON BULLARD, Social Worker, in his official and individual capacities; MS. REEVES,

1

Social Worker, in her official and individual capacities; MR. RODRIGUEZ, Social Worker, in his official and individual capacities; MS. THOMPSON, Social Worker, in her official and individual capacities; MR. J. MILES, BMPT, in his official and individual capacities; DR. APOLITO, N.J. Special Treatment Unit Annex Psych., in his/her personal and individual capacities; TESS KEARNEY; and JACQUELYN OTTINO

_____

On Appeal From the United States District Court
for the District of New Jersey
(Civ. Action No. 2:06-CV-3547)
District Judge: Hon. Faith S. Hochberg

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 26, 2014

Before: McKEE, *Chief Judge*, and FUENTES and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: August 18, 2014 )

OPINION OF THE COURT

FUENTES, *Circuit Judge*:

Edward Salerno and Terry Traylor are civilly committed at New Jersey's Special Treatment Unit (STU) under the New Jersey Sexually Violent Predators Act (SVPA). They brought a 42 U.S.C. § 1983 suit against various state officials responsible for their commitment and treatment, alleging that Defendants violated their First Amendment right against compelled speech and retaliated against them for exercising this right. The District Court granted summary judgment for Defendants. We affirm the District Court.

I.

The SVPA provides for the civil commitment of "sexually violent predators" who are deemed "likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J. Stat. Ann. § 30:4-27.26. Under the SVPA, New Jersey courts may order the civil commitment of an individual upon finding that he or she "needs continued involuntary commitment as a sexually violent predator." N.J. Stat. Ann. § 30:4-27.32.

Residents in the STU are entitled to an annual review hearing before a court to determine whether they need continued confinement. *See* N.J. Stat. Ann. § 30:4-27.35. If the STU believes that a resident is unlikely to commit sexually violent crimes, the STU may recommend that the state authorize the resident to petition the courts for a discharge. *See* N.J. Stat. Ann. § 30:4-27.36. Nothing, however, prevents residents from petitioning for release without such authorization. *See id.* While an STU psychiatrist involved in the resident's treatment must testify at the discharge hearing, the ultimate decision on the resident's discharge belongs to the court. N.J. Stat. Ann. § 30:4-27.30, .35 to .36.

The cornerstone of the STU's treatment model is sex offender specific treatment, which requires that residents disclose and discuss their sexual history and prior sex offenses in increasing levels of detail as they progress through five treatment phases. For example, in Phase Two, residents must complete a "written, moderately detailed, rendition of the events surrounding at leas[t] one sexual offense," App. 118, and in Phase Three, residents must "document[] and orally present[] a sexual offense history," App.

3

120. Residents who fail "to participate in treatment in a meaningful manner" by "refus[ing] to discuss significant topics" are placed on "Treatment Probation" and removed to Phase Two. App. 143. Residents who do not improve their participation during Treatment Probation are then placed on "Treatment Refusal" status and assigned to Phase One, "Orientation." App. 144.

Refusing treatment has two consequences for residents. The first is the loss of "privileges." App. 126. To encourage participation in treatment, the STU devised a system of "rights" and "privileges." All residents are entitled to "rights," which include a radio, linens, clothing, soap, toothbrush and toothpaste, stamps, and writing supplies. However, only residents actively participating in treatment are entitled to "privileges," which include institutional jobs, deodorant, video games, stereo systems, and word processors. Once a resident is placed on Treatment Refusal status, these privileges are taken away.

The second consequence of remaining silent and refusing treatment is the possibility of prolonged detention. The statistics confirm that refusing treatment is closely correlated with prolonged detention. From 1999 to April 2012, 648 individuals were civilly committed in the STU. Of these, sixty-five have been classified as treatment refusers at some point. Significantly, only four treatment refusers have ever been released from the STU—two by death and two due to poor health. By contrast, approximately ninety of the remaining residents have been released. Twenty-nine of these residents were

conditionally released with a recommendation from the STU while another forty-seven were discharged by a court order without an STU recommendation.

Salerno and Traylor have been civilly committed in the STU since completing their criminal sentences—Salerno in 2001 and Traylor in 2002. Both have been classified as treatment refusers for several years because they decline to discuss their sexual history and past sex offenses. As a consequence of refusing treatment, they have been relegated to Phase One of the treatment plan and denied video game systems, CD players, cassette players, and DVD players. Because Salerno attends a Treatment Orientation group, he is permitted to perform two hours of paid institutional work each week. Traylor refuses to attend this group and is denied an institutional job.

## II.

Salerno and Traylor filed separate *pro se* complaints against various state officials under § 1983. Both alleged violations of the First Amendment and sought damages and injunctive relief. The District Court dismissed their claims on qualified immunity grounds. Salerno and Traylor appealed, and we consolidated their appeals. In *Salerno v. Corzine*, 449 F. App'x 118, 123 (3d Cir. 2011), we affirmed the dismissal of Salerno and Traylor's damages claims, but held that the District Court improperly dismissed their claims for injunctive relief. *Id.* We therefore remanded those claims. *Id.*

Following remand, the parties filed cross-motions for summary judgment. Salerno and Traylor argued that the STU's requirement that they disclose and discuss their sexual history and prior sex offenses violated their First Amendment right not to speak. They

5

claimed that, as a result of exercising their right not to speak, they have been denied certain privileges and prevented from advancing through treatment, such that they are effectively detained indefinitely. Salerno and Traylor asserted that these deprivations of liberty violated their First Amendment right against compelled speech and were in retaliation for their exercise of this right.

The District Court granted the Defendants' motion for summary judgment. With respect to Salerno and Traylor's compelled speech claim, the District Court determined that "[t]he loss of such privileges as an institutional job, a DVD player, and a CD player, for non-participation does not implicate a constitutional deprivation of liberty so severe as to violate Plaintiffs' First Amendment right against compelled speech." *Salerno v. Corzine*, Nos. 06-3547, 07-2751, 2013 WL 5505741, at *11 (D.N.J. Oct. 1, 2013). Additionally, the District Court concluded that Salerno and Traylor's indefinite detention did not amount to compelled speech. In pertinent part, the District Court explained that the "duration of [Salerno and Traylor's] detention is . . . determined by the New Jersey courts," not by Defendants, and it "is not determined by whether they exercise their First Amendment right against compelled speech, but instead by whether they continue to present a risk of sexually reoffending." *Id.* at *12. With respect to Salerno and Traylor's retaliation claim, the District Court held that Defendants did not retaliate against Salerno and Traylor because the revoked privileges were insufficient to "deter a person of ordinary firmness from exercising his constitutional rights." *Id.* (quoting *Rauser v. Horn*,

241 F.3d 330, 333 (3d Cir. 2001)). Salerno and Traylor appealed from the District

Court's judgment.[1]

We have carefully reviewed the record and both parties' arguments. We affirm the

judgment of the District Court, substantially for the thorough and persuasive reasons

expressed in Judge Hochberg's written opinion.

---

[1]We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014). Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a grant of summary judgment, we "must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).